**MAYER BROWN LLP**
Edward D. Johnson (189475) (counsel for service)
*wjohnson@mayerbrown.com*
Elspeth V. Hansen (292193)
*ehansen@mayerbrown.com*
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California  94306-2112
Telephone:   (650) 331 2000
Facsimile:    (650) 331 4557

Glenn K. Vanzura (238057)
*gvanzura@mayerbrown.com*
350 S. Grand Ave., 25th Floor
Los Angeles, California  90071
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

Monique J. Mulcare (*pro hac vice to be filed*)
*mmulcare@mayerbrown.com*
1221 Avenue of the Americas
New York, New York 10020
Telephone:   (212) 506-2500
Facsimile:    (212) 262-1900

*Attorneys for Plaintiffs*
*AME Zion Church of Palo Alto, Inc.*

## UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>AME ZION WESTERN EPISCOPAL DISTRICT,<br><br>     Debtor. | CHAPTER 11 CASE<br><br>CASE NO. 20-23726 (FEC) |
| AME ZION CHURCH OF PALO ALTO, INC.,<br><br>     Plaintiff,<br><br>    v.<br><br>AME ZION WESTERN EPISCOPAL DISTRICT, a California corporation, STACCATO POWELL, LEWIS CLINTON, SHEILA QUINTANA, SANDRA K. DAVIS, JAWAAD LOVE, CHICAGO TITLE COMPANY, as Trustee, THE DELLHEIM | ADVERSARY PROCEEDING NO. _____ (FEC)<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, QUIET TITLE, RESCISSION, CONCEALMENT FRAUD AND UNJUST ENRICHMENT** |

1  FAMILY TRUST, DANA DELLHEIM as
Trustee for the DELLHEIM FAMILY
2  TRUST, LANCE EVIC, KEVIN & MARCI
GOODE, HLTN LOANS, an Arizona limited
3  liability company, LISA MOTES, THE
BLEECKER FAMILY TRUST, JEFFREY
4  SCOTT BLEECKER, as trustee for THE
BLEECKER FAMILY TRUST,
5  CALIFORNIA TD SPECIALISTS, as
Trustee, BRAD EVANS, MATTHEW HILL,
6  ROGER WENDELKEN REVOCABLE
LIVING TRUST, YOSEMITE CAPITAL
7  LLC, a California limited liability company,
MARCUS & MILLICHAP REAL ESTATE
8  INVESTMENT SERVICES, INC. and DOES
1 through 50, inclusive,
9
10                              Defendants.

11          AME Zion Church of Palo Alto, Inc. ("**University AME Zion**"), by and through its

12  attorneys, as Plaintiff in the above-captioned adversary proceeding, respectfully submits this

13  complaint ("**Complaint**") against the Defendants, and, upon knowledge of its own acts and upon

14  information and belief as to other matters, alleges as follows:

15
16                          **<u>NATURE OF THE ACTION</u>**

17          1.      Palo Alto's oldest Black church, University AME Zion, brings this adversary

18  proceeding to prevent the unjust and unlawful sale of its sanctuary, which sits at 3549 Middlefield

19  Road in Palo Alto, California ("**3549 Middlefield Road**").

20
21          2.      Under the cover of this bankruptcy proceeding, the Debtor now seeks to satisfy

22  millions of dollars in illegal loans secured with University AME Zion's real property by the

23  Debtor's alter ego.

24          3.      The Debtor's alter ego is a now suspended bishop—Defendant Staccato Powell

25  ("**Powell**")—who abused his office within the national AME Zion Church's regional governing

26  hierarchy to fraudulently induce University AME Zion to transfer 3549 Middlefield Road to the

27
28

Debtor to secure those millions in loans without the knowledge of either University AME Zion's pastor-in-charge or its congregants.

4.      Powell's fraud against University AME Zion was part of his broader scheme to loot several local AME Zion churches under his pastoral care. Powell's scheme is currently the subject of an ongoing FBI investigation. Meanwhile, Powell has been suspended from office by the national church's Board of Bishops pending trial at their upcoming General Conference.

5.      To induce the transfer 3549 Middlefield Road, Powell preached that the Book of Discipline, the governing document for the national AME Zion Church, required each local church to sign over its property to the Debtor, Powell's alter ego, which he misleadingly named "AME Zion Western Episcopal District."

6.      To further induce the transfer, Powell also falsely promised the congregants of University AME Zion that 3549 Middlefield Road would be held in trust by the Western Episcopal District, and falsely claimed that the transfer of title to the Debtor would help other struggling churches.

7.      When some of the Presiding Elders in his district either had the temerity to doubt Powell's interpretation of the Book of Discipline or refused to approve the real property title transfers, Powell simply removed all of the Presiding Elders from their positions on a false pretext. With the Presiding Elders dismissed and out of the way, the Quarterly Conferences at which a local church's real property transfer would have been measuredly considered were not convened. Now unconstrained, Powell illegally made the title transfers by himself.

8.      Despite his claims that 3549 Middlefield Road would be held in trust and used to help struggling churches, Powell used 3549 Middlefield Road and the real property of other local churches as security for a chain of 22 short-term, high-interest loans from the real estate equivalent of payday lenders.

9.      Indeed, Powell had the first loan to be secured by 3549 Middlefield Road lined up two days before his alter-ego Debtor had fraudulently obtained title to the church property.

10.     After closing his first concealed loan transaction, and in ever-increasing amounts, Powell then fraudulently pledged and repledged 3549 Middlefield Road to secure two more of those 22 "hard money" loans.  There is now approximately $3.9 million purportedly owed by the Debtor that is "secured" by 3549 Middlefield Road.

11.     University AME Zion never knew any of these loans existed until it received a default notice, and it certainly never saw a dime of the loan proceeds.

12.     Upon the discovery of Powell's fraudulent scheme, the national church's Board of Bishops demanded that Powell unwind his numerous dealings and restore the local church properties to their rightful owners.  However, while Powell and his alter ego Debtor closed additional loan transactions, Powell and his alter ego Debtor failed to unwind the prior transactions and restore title to the harmed local churches.

13.     Now, under the cover of this bankruptcy proceeding, Powell, through the Debtor, is attempting to illegally market and sell 3549 Middlefield Road to satisfy debts that are solely those of the Debtor.

14.     If the Debtor's unlawful attempts to sell 3549 Middlefield Road are not stopped by this Court, Palo Alto's oldest Black church will lose its sanctuary.

15.     For this reason, the congregation and the pastor-in-charge of University AME Zion have commenced this action to respectfully request that this Court (i) immediately enjoin all of the Debtor's attempts to market and/or sell 3549 Middlefield Road, (ii) quiet title to 3549 Middlefield Road in favor of University AME Zion, (iii) rescind the 2018 Grant Deed (as defined below) and the Deeds of Trust (as defined below), (iv) declare that 3549 Middlefield Road is not the property of the Debtor's estate, (v) declare that 3549 Middlefield Road does not secure any of

the Debtor's Concealed Transactions (as defined below), and (vi) permanently enjoin the Defendants from taking any further actions or making any further representations with respect to 3549 Middlefield Road.

## **PARTIES**

16.    Plaintiff AME Zion Church of Palo Alto, Inc., which is known by its congregants as University AME Zion Church, is, and at all relevant times was, a nonprofit religious corporation organized and existing under the laws of the State of California, with its principal place of business at 3549 Middlefield Road, Palo Alto, in the County of Santa Clara, State of California.

17.    Defendant AME Zion Western Episcopal District (the "**Debtor**") is, and at all relevant times was, a corporation organized and existing under the laws of the State of California, with, per its filings with this Court, its principal place of business at 980 9th Street, Suite 2120, Sacramento, California, County of Sacramento.  Per its statements made to this Court, the Debtor was "created in 2017 with a vision to expand the real estate holdings" and, as such, the Debtor is engaged in, *inter alia*, the real estate development business.  *See* September 14, 2020, Hearing Transcript [Dkt. No. 44] ("**9/14 Transcript**"), pg. 11, ll. 20-25.

18.    Powell (i) was and is the Chief Executive Officer of the Debtor and (ii) is an individual residing in the State of California.

19.    The Debtor—which has a name intentionally similar to that of the episcopal area known as the Western Episcopal District of The African Methodist Episcopal Zion Church (as defined below)—is, and at all times was, a mere shell, instrumentality and conduit that Powell completely controlled and used to carry out his activities.  There exists, and at all times since the Debtor was incorporated there existed, a unity of interest between the Debtor and Powell such that any individuality or separateness between these two Defendants does not, and at all relevant

times did not, exist.  The Debtor, therefore is, and at all times since its incorporation has been, the alter ego of Powell.

20.     Defendant Lewis Clinton is the recently appointed Chief Operating Officer of the Debtor and is an individual residing in the State of California.

21.     Defendant Sheila Quintana was and is the Chief Financial Officer of the Debtor and is an individual residing in the State of California.

22.     Defendant Sandra K. Davis was and is an Officer and member of the Board of Directors of the Debtor and is an individual residing in the State of California.

23.     Defendant Jawaad Love is the Secretary of the Debtor and is an individual residing in the State of California.

24.     At all relevant times herein mentioned, each of Lewis Clinton, Sheila Quintana, Sandra K. Davis, and Jawaad Love (collectively, with the Debtor and Powell, the "**Debtor-Defendants**" and singularly, each a "**Debtor-Defendant**") was and is an agent, servant, employee, alter ego, and/or other representative of the Debtor, and all of the acts and omissions of said Debtor-Defendants were done in such capacity for the Debtor and under the direction of Powell.

25.     Defendant Chicago Title Company is, and at all relevant times was, a California Trustee with its last known principal place of business at 2010 Crow Canyon Place, Suite 212, San Ramon, CA 94583.  Chicago Title Company served as Trustee for The Dellheim Family Trust, Dana Dellheim as Trustee for the Dellheim Family Trust, Lance Evic, Kevin & Marci Goode, HLTN Loans, an Arizona limited liability company, Lisa Motes, The Bleecker Family Trust, and Jeffrey Scott Bleecker, as trustee for The Bleecker Family Trust, who are the participant lenders under that certain September 11th Deed of Trust (as more particularly described below).

26.     Defendants Dellheim Family Trust and Dana Dellheim, as trustee for The Dellheim Family Trust, are 6.34921% participant lenders under that certain September 11th Deed of Trust.

27.     Defendant Lance Evic is a 15.87302% participant lender under that certain September 11th Deed of Trust.

28.     Defendants Kevin and Marci Goode are 7.93651% participant lenders under that certain September 11th Deed of Trust.

29.     Defendant HLTN Loans, as an Arizona limited liability company, is a private alternative lender for real estate and a 15.87302% participant lender under that certain September 11th Deed of Trust.

30.     Defendant Lisa Motes is a 31.74603% participant lender under that certain September 11th Deed of Trust.

31.     Defendants The Bleecker Family Trust and Jeffrey Scott Bleecker, as trustee for The Bleecker Family Trust, are 22.2222% participant lenders under that certain September 11th Deed of Trust.

32.     Defendant California TD Specialists is, and at all relevant times was, a California Trustee with its last known principal place of business at 8190 E. Kaiser Boulevard, Anaheim, California 92808, Orange County in the State of California.  California TD Specialists acts as a California trustee and provides non-judicial foreclosure services.  California TD Specialists served as Trustee for Brad Evans, Matthew Hill, Roger Wendelken Revocable Living Trust and Yosemite Capital LLC, who are the participant lenders under that certain October 27th Deed of Trust (as more particularly described below).

33.     Defendant Brad Evans is a 8.24176% participant lender under that certain October 27th Deed of Trust.

34. Defendant Matthew Hill is the legal owner via non-trust custodial IRA with AET and a 8.24176% participant lender under that certain October 27th Deed of Trust.

35. Defendant Roger Wendelken Revocable Living Trust is a 13.73626% participant lender under that certain October 27th Deed of Trust.

36. Defendant Yosemite Capital LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of the State of California, with its last known principal place of business c/o Tom Malgesini, 225 Marvin Avenue, Los Altos, California 94022, County of Santa Clara in the State of California. Yosemite Capital LLC is a bank-alternative real estate lender that is (i) the sole lender under the March 26th Deed of Trust (as more particularly described below) and (ii) a 69.78022% participant lender under that certain October 27th Deed of Trust.

37. Dellheim Family Trust, Dana Dellheim as Trustee for The Dellheim Family Trust, Lance Evic, Kevin & Marci Goode, HLTN Loans, Lisa Motes, The Bleecker Family Trust, Jeffrey Scott Bleecker, as Trustee for The Bleecker Family Trust, Brad Evans, Matthew Hill, Roger Wendelken Revocable Living Trust, and Yosemite Capital LLC are collectively referred to herein as the "**Debtor's Lenders**" with each a "**Lender**."

38. Defendant Marcus & Millichap Real Estate Investment Services, Inc. ("**Marcus & Millichap**") is, and at all relevant times was, a corporation organized and existing under the laws of the State of California, with its last known principal place of business at 2626 Hanover Street, Palo Alto, California 94304. Marcus & Millichap specializes in commercial real estate sales, financing, research, and advisory services.

39. The true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, are unknown to University AME Zion but may be claiming some right, title, estate, lien, or interest in the real property described in this Complaint, adverse to University AME

Zion's ownership of 3549 Middlefield Road or would place a cloud on University AME Zion's title thereto, and are, therefore, sued under such fictitious names (the "**Unknown Defendants**"). University AME Zion will amend this Complaint to allege the true names and capacities of the Unknown Defendants 1 through 50 when ascertained.  University AME Zion is informed and believes, and thereon alleges, that said fictitiously named Defendants may in some manner be responsible, in whole or in part, for the matters alleged herein and each of them may claim some right, title, estate, lien, or interest in 3549 Middlefield Road adverse to University AME Zion's title, and their claims constitute a cloud on University AME Zion's title to 3549 Middlefield Road.

40.     At all relevant times to this action, each Defendant, including those fictitiously named, (i)(a) was an agent, employee, lender, joint venture, partner, servant, surety of or (b) has aided or assisted one of the Defendants in connection with the Debtor's Concealed Transactions (as defined herein) and (ii) was acting within the scope of said agency, employment, lending relationship, partnership, service, venture, or suretyship, with the knowledge, consent or ratification of at least one of the Defendants in doing the things alleged in this Complaint.

## JURISDICTION AND VENUE

41.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b) and the General Order of Reference 153 from the United States District Court for the Eastern District of California, dated April 2, 1984.  Jurisdiction to grant declaratory relief exists pursuant to 11 U.S.C. § 105.

42.     The Debtor in the above-captioned proceeding under Chapter 11 of the Bankruptcy Code (the "**Case**") is a defendant in this matter.

43.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (K).

44.     Venue for this Case and this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

45.     The statutory predicates for the relief requested herein are contained in Sections 105(a), 362(f), 506, and 541 of the Bankruptcy Code; Bankruptcy Rules 7001(2), 7001(7), 7001(9), and 7065; 28 U.S.C. §§ 2201 and 2202 (the "**Declaratory Judgment Act**"), California Civil Code Sections 1572, 1689, 1709, 1710, and 3412; and California Code of Civil Procedures Sections 760.010 through 761.050, 761.010, 762.010, 762.020, and 764.010 through 764.080.

## <u>UNIVERSITY AME ZION'S CHURCH PROPERTY</u>

46.     University AME Zion's sanctuary is located at 3549 Middlefield Road, Palo Alto, California  95209 and the legal description for the property is as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PALO ALTO, COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:
APN#: 127-29-250

PARCEL ONE:

PORTION OF LOT 91, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF C. M. WOOSTER COMPANY'S SUBDIVISION OF THE CLARKE RANCH", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON NOVEMBER 11, 1912 IN BOOK O OF MAPS, AT PAGE 16, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE CENTER LINE OF MIDDLEFIELD ROAD, AT THE COMMON CORNER FOR LOTS 37, 38, 91 AND 92, AS SAID ROAD AND LOTS ARE SHOWN UPON THE MAP ABOVE REFERRED TO; THENCE FROM SAID POINT OF BEGINNING NORTH 52° 00' WEST ALONG SAID CENTER LINE OF MIDDLEFIELD ROAD FOR A DISTANCE OF 116.72 FEET TO THE WESTERNMOST CORNER OF THAT CERTAIN TRACT OF LAND DESCRIBED IN THE DEED FROM JOSEPH A. HERNANDEZ, ET UX, TO THE AFRICAN METHODIST EPISCOPAL ZION CHURCH OF AMERICA, A CORPORATION DATED JULY 20, 1962, RECORDED SEPTEMBER 7, 1962 IN BOOK 5712 OFFICIAL RECORDS, PAGE 211, SANTA CLARA COUNTY RECORDS; THENCE NORTH 38° 00' EAST AND PARALLEL WITH THE DIVIDING LINE BETWEEN SAID LOTS 91 AND 92 FOR A DISTANCE OF 324.82 FEET TO THE WESTERNMOST CORNER OF THAT CERTAIN TRACT OF LAND DESCRIBED IN THE DEED FROM AME ZION CHURCH OF PALO ALTO, INC., A CORPORATION, TO WILLIAMS CONSTRUCTION COMPANY, A CO-PARTNERSHIP, DATED NOVEMBER 17, 1964, RECORDED DECEMBER 11, 1964 AND BOOK 6777 OFFICIAL RECORDS, PAGE 85, SANTA CLARA COUNTY RECORDS; THENCE SOUTH 52° 00' EAST ALONG SOUTHWESTERLY LINE OF LAND SO DESCRIBED IN THE DEED TO SAID WILLIAMS CONSTRUCTION COMPANY FOR A DISTANCE OF 116.72 FEET TO THE SOUTHERNMOST CORNER THEREOF IN THE SAID DIVIDING LINE BETWEEN LOTS 91 AND 92; THENCE SOUTH 38° 00' WEST ALONG SAID DIVIDING LINE BETWEEN LOTS 91 AND 92 FOR A DISTANCE OF 324.82 FEET TO THE POINT OF BEGINNING.

PARCEL TWO:

ALL OF LOT 13, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "RECORD OF SURVEY PORTION OF LOT 91 OF THE C. M. WOOSTER COMPANY'S SUBDIVISION OF THE CLARKE RANCH", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON APRIL 9, 1963 IN BOOK 159 OF MAPS, AT PAGE 30.

## STATEMENT OF FACTS

I.      **The African Methodist Episcopal Zion Church**

47.     The African Methodist Episcopal Zion Church (the "**AME Zion Church**" or the "**Denomination**") is a historically Black denomination that was founded in 1796.

48.     The General Conference of the AME Zion Church (the "**General Conference**") is the supreme legislative body of the Denomination.  Between the quadrennial meetings of the General Conference, the denomination ministry is overseen by the Board of Bishops of the AME Zion Church (the **"Board of Bishops"**).  The Book of Discipline of the AME Zion Church (the "**Book of Discipline**") is the instrument for setting forth the laws, plan, polity, and process by which the Denomination governs itself.

49.     The Denomination is organized into regionally based "Annual Conferences," so named because its members meet annually to address matters of common ministry for all local AME Zion churches located within the Annual Conference's territorial jurisdiction, as well as matters of concern for all AME Zion clergy that are appointed to serve those local churches. Each Annual Conference is presided over by one of the denomination's bishops.  Many bishops preside over more than one annual conference.

50.     The various Annual Conferences, in turn, are grouped into twelve geographic areas known as Episcopal Districts.  The term "Episcopal" reflects that AME Zion ministries at the Annual Conference level are overseen by bishops.  In essence, an "Episcopal District" is the name used to identify the geographic area that encompasses all of the Annual Conferences over which a

single bishop has been assigned to preside.

51.     The General Conference elected Staccato Powell to become a Bishop of the AME Zion Church on July 23, 2016, and he was formally consecrated as such on July 26, 2016.

52.     Powell was assigned to oversee and preside over all Annual Conferences located within the geographic region known as the Western Episcopal District of The African Methodist Episcopal Zion Church, an area that stretches from San Diego in southern California to Fairbanks, Alaska in the north, and also encompasses the states of Arizona, Colorado, Oregon, and Washington (this geographical area, the "**Western Episcopal District**").  Five multicultural and racially diverse Annual Conferences are located within those states, encompassing fifty-two local churches, which in turn are grouped into eight Presiding Elder Districts (defined below).

53.     Within each Episcopal District, the Presiding Elders serve the critical function of being the supervising intermediary between the local church pastors-in-charge and the bishop, and between the local church itself and the Annual Conference in which it is located.  Each Presiding Elder meets regularly with the pastor-in-charge.  In addition, as required by the Discipline, the Presiding Elder formally presides over a quarterly meeting of the congregation's key lay leaders and all of its clergy.  Known as the Quarterly Conference (so named because of the frequency with which it must meet), this local church body is the chief governing authority in any AME Zion local church.  All other local church committees and boards – including the Board of Trustees (which has general responsibility for the church's real property) and the Board of Stewards (which oversees financial matters) – are amenable to and subject to the direction of the Quarterly Conference.  In the AME Zion denomination, a local church cannot undertake its most significant actions – including any transfer or encumbering of the church's real property – without first obtaining the approval of the Quarterly Conference.  Indeed, as outlined below, any disposition of a local AME Zion's church property is deemed so significant that it must also be approved by a

majority vote of the congregation's entire membership and, even then, only with the written consent of the Bishop.

## II.    The Governing Law of the AME Zion Church: The Book of Discipline

54.    It is a well-settled law of the AME Zion Church that the property of a local church cannot be disposed of or mortgaged outside of the safeguards established by the General Conference and set forth in the Book of Discipline.  Paragraph 398 of The Book of Discipline (the "**Transfer Provision**") provides:

> The Trustees shall not in any case whatsoever dispose of church property by sale or otherwise *without the consent of the majority of the members in full connection, expressed by vote in a meeting called for that purpose*, of which due notice has been given.  Provided, however, that no congregation, Pastor, nor trustee board or agent of the congregation shall mortgage or sell any property of The A. M. E. Zion Church *without confirmation of the Quarterly Conference and written consent of the Bishop of the district or the Annual Conference*.

The Book of Discipline, Para. 398 (2016) (emphasis added).

55.    Accordingly, the Book of Discipline requires that a four-prong test must be completely satisfied before the property of a local church can be disposed of by sale or otherwise encumbered.  The four prongs are as follows:

(i)    A meeting must be held by the Board of Trustees of the local church to consider either a transfer or obtaining a mortgage on the respective church's property.

(ii)    The consent of the majority of the members of the local church "in full connection" must be obtained and such consent must be expressed in a vote at a meeting called for that purpose, of which due notice is given.

(iii)    The consent, once obtained, must be confirmed at the Quarterly Conference before any property may be transferred or mortgaged.

(iv)    Prior to any transfer or mortgage of the church's property, the written consent of the Bishop of the Episcopal District must be obtained.

56.     Satisfaction of each of these prongs must be documented and reflected in the minutes and records of the local church, including (without limitation) the minutes approved and resolutions adopted by the Quarterly Conference and the related meeting minutes and resolutions of the local church's Board of Trustees, which is the body authorized to execute real estate transactions on the local church's behalf, subject to the approval and direction of the Quarterly Conference.   Failure to adhere to these requirements of the Transfer Provision nullifies the transfer.

57.     Within the Book of Discipline, the following provisions are also relevant to church properties:

> All assets owned by an African Methodist Episcopal Zion Church, whether incorporated, unincorporated, or abandoned:
>
> a.     Shall be held by the trustees of the church *in trust* for the African Methodist Episcopal Zion Church; and
>
> b.     *Are subject to The Discipline*, usage, and ministerial appointments of The African Methodist Episcopal Zion Church, as from time to time authorized and declared by the General Conference of said church.

The Book of Discipline, Para. 391.4. (2016) (emphasis added).

58.     Finally, all written instruments of conveyance by which the properties are held or thereafter acquired, for use as a place of divine worship for members of the AME Zion Church or for other church activities, must contain the following trust clause (the "**Trust Clause**"):

> *In trust* that said premises *shall be used, kept maintained*, and disposed of *as a place of divine worship for the use of the ministry, and membership of The African Methodist Episcopal Zion Church in America*, *subject to the provisions of the Discipline*, usage, and ministerial appointments of said church, as from time to time authorized and declared by the General Conference of said church, and by the Annual Conference within whose bounds the said premises are situated. This provision is solely for the benefit of the grantee, and the grantor reserved no right or interest in said premises.

The Book of Discipline, Para. 394 (2016) (emphasis added).

## III.    University AME Zion Church

59.     In 1918, a small gathering met at the home of Mrs. Melvina McCaw at 330 Cowper St., Palo Alto, with one purpose in mind.  This hopeful group wanted to establish an

AME Zion Church in Palo Alto. Ultimately, these founders formed what is Palo Alto's oldest Black church.

60. At first, the founders formed a "mission" church and worshipped downtown at the Fraternal Hall on High Street. They later worshipped in Ostrander Hall, upstairs in a Bank of America building.

61. In 1922, the congregation, wishing to have their own church building but unable to secure a loan on their own, received an outpouring of financial and moral support from generous Palo Altans.

62. By the next year, the congregation had raised enough money to purchase the property at 819 Ramona Street, Palo Alto, California 94301. A successful fund drive produced $1,264.00, and the cornerstone for a brand new University AME Zion Church was laid on April 25, 1925. The building cost $6,000.00—half of those funds were acquired by fund-raising and the remainder was covered by a mortgage. With the help of many groups, such as the Shriners, Kiwanis and Rotary, as well as voluntary citizen donations and favorable editorials in the local *Palo Alto Times*, enough money was raised to burn the mortgage on July 8, 1939.

63. From 1925 to 1965, the congregation thrived within its home until it decided that it was time for a new home.

64. On April 5, 1963, University AME Zion by Quit Claim Deed acquired 3549 Middlefield Road for its new home (the "**1963 Deed**"). On April 8, 1963, the 1963 Deed was recorded in the Office of the County Clerk-Recorder for Santa Clara County (the "**Santa Clara County Clerk's Office**") as Quit Claim Deed No. 2379889. A true and correct copy of the 1963 Deed is attached hereto as **Exhibit A**.

65. Two years later, on July 4, 1965, groundbreaking ceremonies were held at the present Middlefield Road site, and the $65,000 sanctuary became a reality in January 1966.

66.     When the mortgage to build the sanctuary was repaid, there was a mortgage-burning celebration, and 3549 Middlefield Road remained free of encumbrances until the occurrence of the events that underpin this action.

67.     Since the acquisition of 3549 Middlefield Road by University AME Zion in 1963, it has at all times not only continued in possession of 3549 Middlefield Road, but paid all utility bills, insurance premiums, and in every other way has acted (and continues to act) as owner of 3549 Middlefield Road.  Reflecting the reality at hand, the Debtor has never (i) assumed or paid any of these amounts required to maintain 3549 Middlefield Road or (ii) otherwise offered any financial support to University AME Zion in connection with the restoration and upkeep of 3549 Middlefield Road.

68.     Today, University AME Zion is an active parish with a growing membership that warmly welcomes with open arms a diverse mix of cultures from varying socioeconomic and generational backgrounds.  Families, singles, seniors, students, and more are finding their place at University AME Zion.  Services are 9:30 a.m. on Sundays.  University AME Zion has 115 active members, 220 regular in-person congregants, and an average Sunday viewership on Facebook of 800 to 1,000 viewers.  Pre-COVID-19, in addition to University AME Zion's Sunday services, it opened its doors on Tuesdays, Wednesdays, Fridays, and Saturdays with programs.  Even now, University AME Zion continues on with programs such as "Operation Contagious Generosity," through which University AME Zion helps feed its neighbors who have become economically insecure during COVID-19, and "Help One Child," through which University AME Zion collects and then distributes Christmas presents to foster children.

**IV.     Unchecked: Staccato Powell's Self-Contrived Ascension to Absolute Authority**

69.     On or about July 23, 2016, Bishop Staccato Powell was elected as the Presiding Prelate of the Western Episcopal District.

70.     On or about October 28, 2016, Articles of Incorporation were filed with the California Secretary of State establishing the Debtor as a nonprofit religious corporation. The corporation's initial officers were identified as Staccato Powell, as Chief Executive Officer; Sheila Quintana, as Chief Financial Officer; Jawaad Love, as Secretary; and Marcia Meredith, as Agent for Service of Process. Sandra Davis replaced Marcia Meredith, as Agent for Service of Process, on or about October 24, 2018.

71.     Just shy of a year after Powell's election, on or about April 21-22, 2017, a clergy retreat took place in Fontana, California. Unless there was an "extreme emergency," all clergy were expected to attend.

72.     At this retreat, Powell stressed that in order to execute his "vision," there needed to be more tithing, which he asserted now required that the pastors pool all of their respective church resources together to grow the Denomination's ministry within the Western Episcopal District.

73.     Thereafter, Powell systematically used a variety of tactics to force transfers of local church property to his newly established corporation, the Debtor. For starters, Powell, who lead the codification committee that reviews, edits, and updates the Book of Discipline, preached that the Book of Discipline required each local church to sign over its property to the Debtor. With this textual contrivance, Powell advocated that pooling their combined resources was consistent with the Book of Discipline and that in doing so the "pooled resources" would be used to help other struggling churches.

74.     Whether believing his charismatic representations that the church titles would be leveraged to help other struggling churches in the District or fearing Powell's reprisals, some churches transferred the title to their sanctuaries to the Debtor.

75.     Some churches, in contrast, did not heed Powell's demands, which led to him find fault with the Presiding Elders.

76.     As a result, between August 2016 and July 2017, on the pretext that the Presiding Elders were impeding growth and were stuck in an old mindset, Powell removed all of the Presiding Elders from their positions, including those who disagreed with his characterization of the Book of Discipline and those who refused to approve or be party to the property transfers. With the removal of the Presiding Elders, no Quarterly Conferences would be convened and Powell's power was absolute.

## V.     Coercion: Mapping the Architecture of the Lies and Pressure that Forced the Transfer of 3549 Middlefield Road

77.     Powell and the Debtor-Defendants moved quickly to force University AME Zion to deed over the title to 3549 Middlefield Road to the Debtor.

78.     At the behest of Powell, a meeting of University AME Zion's Board of Trustees was convened.  At Powell's direction, the Board of Trustees voted to approve the transfer to the Western Episcopal District based upon Powell's representations that (i) they would be aiding/helping their fellow struggling churches within the Western Episcopal District, such as St. Stephen AME Zion Church in Sacramento, California and (ii) the transfer would be for the "good of the entire Western Episcopal District."

79.     Critical to both University AME Zion's congregation and the Pastor–in-Charge, The Reverend Kaloma A. Smith ("**Pastor Smith**"), were the assurances of the Debtor-Defendants that 3549 Middlefield Road would be transferred to, and held in trust by, the Western Episcopal District (these representations and assurances, collectively, the "**Misrepresentations**").

80.     Powell and his surrogate officers at the Debtor drove the entire transfer process and drafted all the documentation.  The course of events proceeded as follows:

- On or about September 9, 2017, Sheila Quintana requested that University AME Zion confirm its status as an exempted 501(c)(3), which University AME Zion confirmed.

- Four days later, on or about September 13, 2017, Sheila Quintana requested that University AME Zion's Board of Trustees execute a resolution confirming the Trust in Conveyance clause (the "**2017 Resolution**").  In her email, she emphasized that the 2017 Resolution needed to be signed and returned "*as soon as possible* (***very tight deadlines for Bishop***)."

- Two days later, on or about September 15, 2017, the requested 2017 Resolution was signed and returned by email to Sheila Quintana.

- That same day, the Debtor's agent, Kevin Heslin, inspected the Sanctuary and the Church Property and provided Pastor Smith with a draft of the grant deed for execution that listed "University AME Zion" as fee title owner.  However, title to property as set forth in the 1963 Deed was held in the name of AME Zion Church of Palo Alto, Inc.

- Two days later, on or about September 17, 2017, at the behest of Powell's surrogates, University AME Zion, at members' meeting, voted to approve a second supplemental resolution to transfer 3549 Middlefield Road from AME Zion Church of Palo Alto, Inc. to University AME Zion. Ultimately, this resolution was not used.

- Three days later, on or about September 20, 2017, Sandra Davis went to the Secretary of State to have both corporate entities—University AME Zion Church and AME Zion Church of Palo Alto—reinstated.

- On or about October 4, 2017, Sandra Davis again went to the Secretary of State and confirmed that both entities had been reactivated.  Sandra Davis also went to the Franchise Tax Board to expedite approval of Form 3500

to exempt University AME Zion from California franchise taxes.  At that time, there was a minimum 90-day backlog in approval of such applications.

- On or about October 12, 2017, the Franchise Tax Board requested that University AME Zion also complete a Form 3500 for AME Zion Church of Palo Alto.  Again, adhering to Powell's timing demands, this request was promptly completed by University AME Zion, with the approval of the Board of Stewards, on the same day.

- As soon as the Franchise Tax Board granted the exemption for AME Zion Church of Palo Alto, Inc., the "revised" grant deed using the legal name in which 3549 Middlefield Road had originally been deeded to University AME Zion—AME Zion Church of Palo Alto, Inc.—was proffered to Pastor Smith for execution.

81.     The 2017 Resolution approved by Board of Trustees of University AME Zion required that (i) 3549 Middlefield Road be held "in trust" and (ii) "all written instruments of conveyance" contain the Trust Clause.

82.     Yet, the "revised" grant deed, which (i) now had AME Zion Church of Palo Alto, Inc. deeding 3549 Middlefield Road to the Debtor (which was believed by University AME Zion at that time to be the corporate embodiment of the Western Episcopal District), (ii) was executed on or about March 28, 2018, by Pastor Smith, and (iii) was recorded in the Santa Clara County Clerk's Office on April 2, 2018 as Grant Deed No. 23899797 (the "**2018 Grant Deed**"), was missing the required Trust Clause.  A true and correct copy of 2018 Grant Deed is attached hereto as **Exhibit B**.  Pastor Smith did not receive a filed copy of the 2018 Grant Deed.

83.     The entire process of transferring 3549 Middlefield Road was so pressurized that

COMPLAINT; CASE NO. 20-23726 (FEC); ADVERSARY PROCEEDING NO. -_____

University AME Zion's congregation, its Board of Trustees, its Board of Stewards, and Pastor Smith were never allowed to review the "revised" grant deed, ask questions, or obtain either ecclesiastical or legal advice on the proffered grant deed. Instead, under his pressing mandate, Pastor Smith was forced to rely on Powell's interpretation of what was required by the Book of Discipline and signed next to the little checkmark on the signature line on the 2018 Grant Deed.

84.     Critically, there was no Quarterly Conference approving any transfer of University AME Zion's 3549 Middlefield Road. Nor, in fact, is there any record that anyone ever sought or obtained the written consent of Powell prior to the transfer of 3549 Middlefield Road.

85.     Finally, University AME Zion received no compensation or consideration in connection with the 2018 Grant Deed.

## VI.     Using Its Fraudulently Obtained Title to 3549 Middlefield Road, the Debtor Secures Undisclosed and Unlawful Loans

86.     Unbeknownst to University AME Zion, two days earlier, on March 26, 2018, a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "**March 26th Deed of Trust**") had been executed by Sheila Quintana on behalf of the Debtor. The March 26th Deed of Trust was recorded in favor of Yosemite Capital LLC in the Santa Clara County Clerk's Office on April 2, 2018 as Deed of Trust No. 23899798. The March 26th Deed of Trust, which purportedly secured a loan to the Debtor in the principal amount of $2,000,000.00, was recorded on the same day immediately after the 2018 Grant Deed was recorded.

87.     This loan was taken out on 3549 Middlefield Road without the knowledge, let alone the approval, of anyone at University AME Zion. None of the requirements of the Transfer Provision were complied with. Neither Sheila Quintana nor any other Debtor-Defendant was authorized by University AME Zion to execute the March 26th Deed of Trust. University AME Zion did not receive any proceeds from this loan.

88.     On September 10, 2018, Sheila Quintana, on behalf of the Debtor, executed that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of September 11, 2018 (the "**September 11th Deed of Trust**"), in favor of the Dellheim Family Trust, Lance Evic, Kevin and Marci Goode, HLTN Loans, Lisa Motes, and the Bleecker Family Trust.  The September 11th Deed of Trust was recorded in the Santa Clara County Clerk's Office on September 17, 2018 as Deed of Trust No. 24024565.  This September 11th Deed of Trust allegedly secured a loan to the Debtor in the principal amount of $3,150,000.00.

89.     This Deed of Trust was taken out on 3549 Middlefield Road without the knowledge of anyone at University AME Zion.  None of the requirements of the Transfer Provision were complied with.  Neither Sheila Quintana nor any other Debtor-Defendant were authorized by University AME Zion to execute the September 11th Deed of Trust.  University AME Zion did not receive any proceeds from this loan.

90.     Executed on October 1, 2018, a Deed of Reconveyance was recorded in the Santa Clara County Clerk's Office on October 4, 2018 as Deed of Reconveyance No. 24036620 by California TD Specialists, on behalf of Yosemite Capital LLC, thus transferring the property back to the Debtor (the "**October 1st Reconveyance**").

91.     No one at University AME Zion was aware of this transfer.  In fact, the deed was recorded and returned to the Debtor at a strip mall in San Joaquin County with an address of 2339 West Hammer Lane, Suite C153, Stockton, California  95209.

92.     Almost one year later, on August 14, 2019, the Dellheim Family Trust executed an Assignment of Deed of Trust in favor of the Bleecker Family Trust transferring all of its interest under the September 11th Deed of Trust.  The Assignment of Deed of Trust was recorded in the Santa Clara County Clerk's Office on September 10, 2019 as Deed of Trust No. 24276634 (the "**August 14th Assignment**").

93.     No one at University AME Zion was aware of this transfer.

94.     On October 28, 2019, the Debtor, via Sandra Davis, executed that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of October 27, 2019 (the "**October 27th Deed of Trust**," together with the March 26th Deed of Trust and the September 11th Deed of Trust, the "**Deeds of Trust**" and, together with the October 1st Reconveyance and the August 14th Assignment, the "**Debtor's Concealed Transactions**" or the "**Transactions**" with each a "**Transaction**").  The October 27th Deed of Trust was recorded in the Santa Clara County Clerk's Office on November 1, 2019 as Deed of Trust No. 24318908.  This Deed of Trust allegedly secures a loan from Yosemite Capital LLC, which proffered approximately 69.80% of the purported loan amount.  The following participants purportedly proffered the remaining 30.20% of the purported loan to the Debtor: Brad Evans, Matthew Hill, and the Roger Wendelken Revocable Living Trust.  The October 27th Deed of Trust purports to secure a loan in the principal amount of $3,640,000.00.

95.     This loan was taken out on 3549 Middlefield Road without the knowledge of anyone at University AME Zion.  None of the requirements of the Transfer Provision were complied with.  Neither Sandra Davis nor any of the other Debtor-Defendants was authorized by University AME Zion to execute the October 27th Deed of Trust.  University AME Zion did not receive any proceeds from this loan.

96.     In total, Powell proffered University AME Zion's 3549 Middlefield Road to secure approximately $3,921,000.00 of loans made to the Debtor.  None of the Debtor-Defendants ever disclosed any of these Transactions to University AME Zion.  Instead, even now, the Debtor-Defendants would conceal the same from University AME Zion.  None of these Transactions were approved or allowed by the 2017 Resolution.  None of these Transactions comply with the Transfer Provision.  None of the Transactions were disclosed by Powell at any

Quarterly or Annual Conference.  Finally, none of these "written instruments" contained the Trust Clause required by Paragraph 394 of the Book of Discipline.

**VII.    The Revelations: Discovery of the Debtor's Concealed Transactions**

97.    On or about January 25, 2019, University AME Zion received a notice of overdue property tax.  Since University AME Zion is a tax-exempt corporation and 3549 Middlefield Road was supposed to be held in trust by a likewise tax-exempt corporation, no taxes should have been charged.  Pastor Smith, therefore, forwarded the notice to Powell and the Debtor-Defendants.

98.    In response, Sandra Davis explained away the notice by stating "the property location for University AME Zion remains the same.  We have a new name for the church etc. The year may have confused the agency.  Thank you!"

99.    None of the Debtor-Defendants offered any further explanation for the tax notice or disclosed the Transactions that had occurred in the intervening period.

100.    On or about April 4, 2020, Pastor Smith received a call from a concerned and reliable third party who indicated that (i) there was a mortgage on the property in the amount of approximately $3.6 million dollars, (ii) approximately $11,000,000.00 in mortgages had been taken on several of the churches, and (iii) the governing body of the national church, the Board of Bishops, upon learning of Powell's activities, had given Powell until July 24, 2020, to clear all the debt and have in place a process to return the deeds of ownership to each of the local churches.

101.    This call was the first time that Pastor Smith and University AME Zion's congregants learned of the Debtor's Concealed Transactions and the Deeds of Trust that had been placed on 3549 Middlefield Road.

102.    On or about May 18, 2020, Pastor Smith was invited to a call with Powell and

several other pastors about the mortgages on the various church properties. Powell assured each of the pastors on the call that "the mortgages would be taken care of by the end of June, early July at the latest, and that each church and pastor would have money in the bank after this was all done."

103.    However, on or about June 6, 2020, University AME Zion received a default notice in the mail from California TD Specialists (the "**Default Notice**"). The Default Notice, which was filed in the Santa Clara County Clerk's Office on May 28, 2020 as Default Notice No. 24490246, sought the immediate payment of the past due amount of $235,730.48.

104.    With respect to each Transaction that has purported to use 3549 Middlefield Road as security, the Debtor's Lenders either knew or should have known that University AME Zion was an active parish. The Debtor's Lenders are sophisticated parties specializing in "alternative" financing. These Lenders either were (i) aware of the fraud or (ii) reckless and/or negligent in failing to discover it.

105.    At any time, the Debtor's Lenders, their agents and their professionals could have spoken with and/or contacted University AME Zion to confirm whether any of the Transactions had been authorized by University AME Zion in accordance with the Book of Discipline.

106.    No Lender contacted University AME Zion.

107.    Had any of the Debtor's Lenders made inquiries by going to or otherwise contacting University AME Zion, they would have been told by University AME Zion that (i) a conveyance free of the trust imposed by the Book of Discipline had not been intended, (ii) the 2018 Grant Deed, which was (1) not in conformance with either the 2017 Resolution or the Transfer Provision and (2) missing the Trust Clause, should not be relied upon, and (iii) Deeds of Trust that purport to secure the loans taken by the Debtor were neither (1) in compliance with the Book of Discipline nor (2) had been authorized by University AME Zion.

108.    Instead, the Debtor's Lenders only contacted University AME Zion when they served the Default Notice.    By this act, the Debtor's Lenders showed that they knew that University AME Zion was there all along but they chose not to confirm with University AME Zion whether their Transactions with the Debtor were authorized in compliance with the Book of Discipline.

109.    Shocked and alarmed, Pastor Smith immediately reached out to Powell and asked him what to do about the Default Notice.    The following is their exchange:



110.    While Powell was so very careful not to personally execute any of the Deeds of Trust or otherwise put anything in writing, his words "Put the letter in the drawer and remember what I told you" crystalize the power that he wielded.

111.    Yet, Powell did not "resolve" the matter.

112.   On July 27, 2020, the Board of Bishops sent a letter to all AME Zion congregations and clergy conducting ministry within the Western Episcopal District (the "**July 27th Letter**").

113.   In the July 27th Letter, the Board of Bishops indicated that a number of church properties in the Western Episcopal District had been conveyed without the approval of duly recorded votes of the local church Board of Trustees, the Quarterly Conference, and an officially called Members Meeting.

114.   The Board of Bishops indicated that it had also been made aware that "a number of our churches received foreclosure notices due to delinquent payments."

115.   The July 27th Letter then went on to state that the Board of Bishops had met with Powell on July 22, 2020.  During that meeting, the Board of Bishops had received a report from Powell in which he again promised "to bring this situation to an appropriate resolution."

116.   Critically, the Board of Bishops reaffirmed the position that it had set forth in its August 7, 2018, letter, that:

> The procedures used [by Powell] to change local church deeds and convey them to the Western Episcopal District *did not conform to the process described in the AME Zion Discipline*;[and] therefore, it is the position of the Board of Bishops that *all deeds must be restored to the original language and any deed for church property must be consistent with our law*.

117.   The Board of Bishops acknowledged that, despite its directions to Powell, to date, he failed to follow its mandate.

118.   Affirming its mandate that Powell restore the deeds to the local churches, the Board of Bishops then referred these matters back to Powell to resolve "in a manner consistent with church law."

119.   Despite his "expressed desire to bring this situation to an appropriate resolution," Powell did nothing.

120.     Out of options, with default notices accumulating, one local church (First AME Zion Church of San Bernardino) already lost to foreclosure, and the pressing and reiterated Board of Bishops' mandate to deed the various properties back to the local churches (including 3549 Middlefield Road to University AME Zion), Powell sought protection under Chapter 11 of the Bankruptcy Code for the Debtor to forestall the foreclosure of another local church property on July 30, 2020.

121.     In reaction to the Debtor's bankruptcy filing, the alarming failure of Powell to deed the properties back to the local churches and the mounting and equally alarming questions regarding the monumental financial obligations apparently incurred by Powell through the Debtor, on August 7, 2020, the Board of Bishops relieved Powell of all Episcopal duties.

122.     The Right Rev. George D. Crenshaw has now assumed the responsibilities of Presiding Bishop of the Annual Conferences located within the Western Episcopal District, which include all aspects of ecclesiastical and fiscal oversight until the current investigations of the operations of the Western Episcopal District are concluded.

123.     While the question of what Powell did with the proceeds of the Debtor's Concealed Transactions, along with the question of whether Powell used any portion of the tithing of the local churches within the Western Episcopal District to service the debt incurred by the Debtor remains unresolved, once Bishop Crenshaw was appointed as the Presiding Bishop of the Western Episcopal District, assuming responsibility for all ecclesial and fiscal matters, any largesse that Powell had afforded himself with respect to any AME Zion assets and funds located in that region was gone. Moreover, contrary to statements made to this Court, after August 7, 2020, Powell no longer has any authority to enter into any transactions regarding any property in the Western Episcopal District.

124.    Yet, before this Court, Powell, through the Debtor, seeks to continue his activities by:

- Including 3549 Middlefield Road as property of the Debtor in its Schedules.

- Failing to disclose to this Court that he is under a mandate to return all AME Zion local churches (including 3549 Middlefield Road) to their rightful owners, the local churches themselves.

- Affirmatively stating to this Court, through the Debtor's counsel, that the Debtor has "a right to sell, refinance, and repurpose . . . the real property" (9/14 Transcript, pg. 16, ll. 6-8).

- Affirmatively responding to this Court, through the Debtor's counsel, that the Debtor could freely sell the local church properties situated in the Western Episcopal District, when, in fact, the Debtor lacks any authority to do so because (1) its controlling officer and alter ego (Powell) is under the outstanding mandate to cause the return of every single local church property (which Powell has repeatedly promised he would do) and (2) any future transaction involving those properties or any other AME Zion assets now requires the permission of the Board of Bishops (9/14 Transcript, pg. 16, ll. 9-14 and the July 27th Letter).

- Affirmatively responding to this Court, through the Debtor's counsel, that the Debtor has the "unfettered right do whatever they want with the[se] propert[ies]" (9/14 Transcript, pg.16, ll. 16-20).

- Engaging in new efforts, now with the Debtor's Lenders and Marcus & Millichap, to market and sell certain church properties in the Western

Episcopal District (including 3549 Middlefield Road) in contravention of the

mandate of the Board of Bishops and the provisions of the Book of Discipline.

125.    On January 7, 2021, noting the assertions and positions taken by the Debtor before this Court, which the Board of Bishops determined was a further aggravating factor in the course of Powell's conduct to date, the Board of Bishops took the extraordinary and grave step of suspending Powell as "an active Bishop of the AME Zion Church" pending trial at the upcoming General Conference.  A true and correct copy of the January 7, 2021 Statement of the Board of Bishops (the "**January 7th Statement**") is attached hereto as **Exhibit C**.

126.    While the Board of Bishops moves forward with its prosecution of Powell for his "severe infractions and maladministration," on a parallel track, the Federal Bureau of Investigation is conducting a criminal investigation into the Debtor-Defendants' conduct, including their directing of, and participation in, the illegal transactions that threaten through these proceedings to forever deprive University AME Church of 3549 Middlefield Road.  More specifically, as the Denomination advised this Court in its December 2, 2020 Status Conference Statement, the Debtor-Defendants' conduct has caused:

> the District Attorney for Santa Clara County, and more recently the Federal Bureau of Investigation, to initiate criminal investigations into the very transactions that lie at the heart of this Bankruptcy Proceeding, with a particular focus on the legitimacy of the Debtor's claim. The Denomination's understanding is that the Santa Clara District Attorney is now standing down in deference to the FBI's broader jurisdiction.  The Denomination is cooperating fully with the FBI's investigation, which is ongoing.

*See* December 2, 2020 Status Conference Statement [Dkt. No. 114], pg. 4, ¶ 7, ll. 15-20.

**VIII.    The Necessity of this Adversary Proceeding**

127.    As noted above, the Debtor has recently sought to engage Marcus & Millichap to help it market and sell the properties that it claims are assets of its estate.

128.    Absent the relief sought herein, the Debtor would use the Bankruptcy Code and

this Court to deprive University AME Zion of 3549 Middlefield Road.

129.    To date, the Debtor has not been forthcoming in disclosing to this Court either the activities that it had engaged in prior to seeking Chapter 11 protection or the harm that the Debtor-Defendants have inflicted on University AME Zion.

130.    Having discovered the depth of betrayal by Powell and the other Debtor-Defendants, University AME Zion cannot (i) take the risk of 3549 Middlefield Road being sold to satisfy debts that are solely those of the Debtor, (ii) allow this gross injustice to stand, or (iii) because of the Debtor-Defendants' continued efforts to conceal the true state of affairs, allow this Court to become unwittingly involved in the fraud perpetrated by the Debtor-Defendants on University AME Zion.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Section 105 Preliminary and Permanent Injunction**
(Against All Defendants, known and unknown)

131.    University AME Zion realleges and incorporates by reference all the allegations contained in each of the paragraphs set forth above, as if fully set forth herein.

132.    A Bankruptcy Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

133.    A Bankruptcy Court may, therefore, in its discretion, issue injunctive relief under section 105 of the Bankruptcy Code in order to restrain activities that threaten the reorganization process or impair the court's jurisdiction with respect to the case before it.

134.    To date, the Debtor has proceeded before this Court as if the properties involved could be freely sold.

135.    The Debtor has not informed the Court that the properties are (i) subject to the mandate of the Board of Bishops and (ii) must be deeded back to the local churches, including

University AME Zion.

136.    University AME Zion is the rightful owner of 3549 Middlefield Road and any claim of ownership by the Debtor is a product of the Debtor-Defendants' fraudulent acts.

137.    The Debtor-Defendants should not be allowed to continue their efforts to market, sell, convey or otherwise dispose of 3549 Middlefield Road to repay debts that are solely that of the Debtor.

138.    Every day that Debtor-Defendants are allowed to continue their efforts to "reorganize," the Debtor causes irreparable harm to University AME Zion.  The Debtor-Defendants' activities impose an immediate and substantial risk to University AME Zion because if the Debtor is allowed to sell or transfer all or part of 3549 Middlefield Road, University AME Zion would never recover.  No compensation to University AME Zion would adequately compensate it for the loss of 3549 Middlefield Road because, at issue, is the historic, hard-earned sanctuary of Palo Alto's oldest Black church, which sits on a unique parcel of real property.  There is no adequate remedy at law to rectify the injustice that has already been inflicted on University AME Zion and that University AME Zion would further suffer if sale of 3549 Middlefield Road was authorized by this Court.

139.    Accordingly, the public interest will be served by the issuance of an injunction because the requested injunctive relief will block the Defendants from capitalizing on the fraud perpetrated by the Debtor-Defendants against University AME Zion.

140.    This Court's issuance of relief enjoining all the Defendants would not harm any of the Defendants but would merely preserve the status quo of the parties until the Court can fully and accurately assess each party's legitimate rights and obligations.  Without such relief, the Debtor-Defendants will continue to inflict material harm on University AME Zion.

141.    Therefore, preliminary and permanent injunctive relief, pursuant to section 105 of

the Bankruptcy Code, enjoining Defendants from taking any further actions with respect to 3549 Middlefield Road, is necessary and appropriate.

### SECOND CAUSE OF ACTION
**Declaratory Judgment**
(Against All Defendants, known and unknown)

142.  University AME Zion realleges and incorporates by reference all the allegations contained in each of the paragraphs set forth above, as if fully set forth herein.

143.  This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

144.  Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Bankruptcy Courts, as units of the district court, have the authority to issue declaratory judgments.

145.  Courts possess jurisdiction to issue declaratory relief where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

146.  While the Debtor has listed 3549 Middlefield Road in its schedules as an asset of the estate, there is a substantial controversy between the Debtor and University AME Zion; namely, title to 3549 Middlefield Road.  The Debtor has never had nor assumed any of the responsibilities of ownership.  Whereas, since 1963, University AME Zion, as the true owner of the property, has paid (and continues to pay) all costs required to maintain its sanctuary and the grounds.

147.  The disclosure of the actions taken by Debtor-Defendants has revealed that

University AME Zion is perilously close to losing 3549 Middlefield Road. As such, the harm to University AME Zion is of sufficient immediacy and such stark reality as to warrant the issuance of a declaratory judgment.

148.     The 2018 Grant Deed was executed solely on the basis that (i) the transfer would be for the "good of the Western Episcopal District" and (ii) the transfer would be "in trust" to the Western Episcopal District, not the Debtor. It was in reliance on these representations that the 2018 Grant Deed was obtained without providing any consideration to University AME Zion.

149.     In addition to these intentional and material Misrepresentations that make the 2018 Grant Deed voidable and unenforceable, the 2018 Grant Deed is also unenforceable because it failed to adhere to every aspect of both the Transfer Provision and the 2017 Resolution under which the transfer was approved.

150.     If left outstanding, the 2018 Grant Deed, which has already caused serious injury to University AME Zion, will cause irreparable injury to University AME Zion.

151.     A declaratory judgment affirming that (i) 2018 Grant Deed is void, (ii) title to 3549 Middlefield Road must be "restored" to University AME Zion, as the Board of Bishops has twice decreed, (iii) the Debtor does not have a cognizable interest in 3549 Middlefield Road, and (iv) 3549 Middlefield Road is not "property" of the Debtor's estate under section 541 of the Bankruptcy Code is both necessary and appropriate.

### THIRD CAUSE OF ACTION
#### Quiet Title
(Against All Defendants, known and unknown)

152.     University AME Zion realleges and incorporates by reference all the allegations contained in each of the paragraphs set forth above, as if fully set forth herein.

153.     The claims herein involve University AME Zion's rights, title and interest in, and to 3549 Middlefield Road. University AME Zion is the owner of 3549 Middlefield Road and has

never authorized, agreed, permitted or consented to any sale, encumbrance, pledge as collateral or other form of lien or claim to title on 3549 Middlefield Road.

154. The basis of University AME Zion's title is its 1963 Deed.

155. University AME Zion has been both in possession of and had title to (*i.e.*, seised of) 3549 Middlefield Road at all times for the fifty-seven years before the commencement of this action.

156. On or about March 28, 2018, University AME Zion was induced to transfer title to the Western Episcopal District on the basis of and in reliance upon the Misrepresentations.

157. In addition, University AME Zion was not aware nor was it disclosed by the Debtor-Defendants that the Debtor had already executed the March 26th Deed of Trust two days before the 2018 Grant Deed had been executed.

158. Thereafter, Debtor-Defendants and Debtor's Lenders engaged in multiple concealed Transactions that purported to encumber 3549 Middlefield Road by clouding title with the Deeds of Trust and other liens and conveyances.

159. University AME Zion did not discover the Debtor's Concealed Transactions until April 4, 2020.

160. Since these Transactions were concealed from University AME Zion, they were never approved by University AME Zion and the Book of Discipline's Transfer Provision.

161. Accordingly, as twice determined by the Board of Bishops, the Debtor's Concealed Transactions are not binding on University AME Zion and the Debtor—through its controlling officer and alter ego, Powell—is under the mandate to return title to 3549 Middlefield Road to University AME Zion.

162. Turning to each of the Defendants, particularly the Debtor's Lenders, who purport to have an interest in or encumbrance on 3549 Middlefield Road through one of the Debtor's

Concealed Transactions, without question, they knew where to send the Default Notice. Therefore, at the inception of each Transaction, they knew that University AME Zion was an operating AME Zion Church. Accordingly, at a minimum, each of the Debtor's Lenders knew, or at least had constructive knowledge of, University AME Zion's true claim to title to 3549 Middlefield Road.

163. Each of the Debtor's Lenders either knew of, or by minimal inquiry should have discovered, University AME Zion's ownership of 3549 Middlefield Road and the fact that 3549 Middlefield Road is subject to the exacting rules contained in the Book of Discipline that were specifically enacted to prevent the casual transfer of real property out of the AME Zion Church.

164. None of the Deeds of Trust comply with the Transfer Provision and all of the Deeds of Trust are missing the Trust Clause.

165. With University AME Zion clearly being a fully worshipping congregation within the AME Zion denomination, actively conducting ministry on the very premises in question and continuing to bear full responsibility for all obligations imposed on owners of real property, each of the Debtor's Lenders had either actual or constructive notice of the defects in their security interests based on the initial fraudulent conveyance and other errors described above.

166. Now before this Court, the Debtor and the Defendants are in the process of attempting to market, sell, and transfer the title to 3549 Middlefield Road.

167. University AME Zion respectfully requests that all claims, encumbrances, liens, and clouds against the title to 3549 Middlefield Road be quieted in favor of University AME Zion in its legal name "AME Zion Church of Palo Alto, Inc." and against the claims of all the Defendants, including the 1 through 50 described in Paragraph 39 above, whether or not any such claim is known to University AME Zion.

168. University AME Zion also respectfully requests that, in order to avoid violating

the automatic stay, the requirement that a notice of *lis pendens* be filed in compliance with California Civil Procedure Section 761.010 be waived or, alternatively, with leave of the Court, that either (i) the filing of this action be deemed to effect such notice or (ii) the stay be modified to allow University AME Zion to file the same as required by California Civil Procedure Section 761.010.

169.    University AME Zion seeks to quiet title as of either (x) March 26, 2018, the date on which the concealed March 26th Deed of Trust was executed or (y) March 28, 2018, the date on which the fraudulent 2018 Grant Deed was executed.

<u>**FOURTH CAUSE OF ACTION**</u>
**Rescission**
(Against All Defendants, known and unknown)

170.    University AME Zion realleges and incorporates by reference all the allegations contained in each of the paragraphs set forth above, as if fully set forth herein.

171.    University AME Zion seeks rescission of any and all purported grant deeds, deeds of trust, assignments or any other agreements that have been recorded because they are the product of fraud.

172.    Both the consent of University AME Zion's Board of Trustees and Pastor Smith's signature to the 2018 Grant Deed were obtained through a cocktail of Misrepresentations, mistakes, duress, and undue influence by Powell.

173.    The Debtor-Defendants knew the Misrepresentations that they made to University AME Zion to be false and the facts to be otherwise (*i.e.*, Debtor-Defendants had already lined up a $2,000,000 loan, 3549 Middlefield Road was immediately saddled with the March 26th Deed of Trust on the same day that the 2018 Grand Deed was filed, and the Debtor-Defendants actively concealed this loan transaction).

174.    University AME Zion justifiably relied upon the representations of Powell and, in

the absence of a countervailing authority, was required to adhere to Powell's mandates.

175. No consideration was requested or expected in reliance on the representation that 3549 Middlefield Road would be held "in trust" for the use and benefit of AME Zion ministry within the Western Episcopal District and, per the 2017 Resolution and the Book of Discipline, the 2018 Grant Deed would reflect that understanding by incorporating the Trust Clause.

176. Instead, with Debtor-Defendants driving the transfer of 3549 Middlefield Road, the Trust Clause was missing and two of the required steps of the Transfer Provision were skipped.

177. When combined with the concealed March 26th Deed of Trust, the 2018 Grant Deed transaction was so one-sided in favor of the Debtor that only a party who (i) had been intentionally misguided, (ii) was under duress and delusion, or (iii) subject to undue influence would accept it and only a party who was unfair and dishonest would make it.

178. University AME Zion has suffered and will suffer substantial harm and injury if the 2018 Grant Deed is not rescinded because University AME Zion will be deprived of both its legal title and the beneficial use of 3549 Middlefield Road.

179. Given the gravity of the impact of the acts that the Debtor-Defendants perpetrated on University AME Zion, the resulting 2018 Grant Deed and the subsequent undisclosed Deeds of Trust are unconscionable and should not be permitted to survive or impact University AME Zion now that the light of justice shines upon their ignoble conception.

180. This Court has authority, in equity, to rescind the 2018 Grant Deed and University AME Zion requests such rescission.

### FIFTH CAUSE OF ACTION
**Actual Fraud by Concealment**
(Against Debtor-Defendants)

181. University AME Zion realleges and incorporates by reference all the allegations

contained in each of the paragraphs set forth above, as if fully set forth herein.

182.    The apparent consent of University AME Zion to the 2018 Grant Deed was not informed, real, mutual, or free in that it was obtained by fraud.

183.    Instead, the transfer was underpinned by the Misrepresentations and demands of Powell.

184.    The Debtor-Defendants both (i) concealed that the transfer of 3549 Middlefield Road was not made in trust for AME Zion ministry within to the Western Episcopal District but, instead, was being siphoned off to the Debtor and (ii) intentionally omitted from the 2018 Grant Deed the Trust Clause required by the 2017 Resolution and the Book of Discipline.

185.    The Debtor-Defendants also concealed that they had already executed the March 26th Deed of Trust—two days before the 2018 Grant Deed was executed.

186.    Until the disclosure of the Debtor's Concealed Transactions occurred on April 4, 2020, University AME Zion was ignorant of the existence of the facts and acts that the Debtor-Defendants had concealed.  Notwithstanding the incredible pressure that Powell had exerted on both University AME Zion's congregants and Pastor Smith, had any of these material facts been disclosed instead of being concealed prior to the execution of the 2018 Grant Deed, University AME Zion would not have given even the limited approvals Powell procured for its apparent consent to the 2018 Grant Deed.  University AME Zion most certainly did not approve either the March 26th Deed of Trust or any of the subsequent Transactions, which the Debtor-Defendants also concealed in their entirety.

187.    At the time, University AME Zion's reliance on the Misrepresentations was justified because the Debtor-Defendants were in positions of advantage with respect to knowledge of facts concerning the preparation and execution of the 2018 Grant Deed.  The Debtor-Defendants controlled every aspect of this transfer.

188.     Reliance by University AME Zion was also given because Powell, Sandra Davis and Sheila Quintana also held positions of authority within the Western Episcopal District, including but not limited to positions involving the management of the Western Episcopal District's finances and operations.

189.     As the spiritual head and presiding bishop of all Annual Conferences located within the Western Episcopal District, Powell owed a fiduciary duty to University AME Zion to always act with honesty and integrity.  Powell and each of the Debtor-Defendants acting at his direction had the duty to disclose the true nature and implications of executing the 2018 Grant Deed.

190.     Through the Debtor, Powell, Sheila Quintana and Sandra Davis knew, at the time, that (i) the statements that they made to Pastor Smith and the congregation of University AME Zion to get the 2018 Grant Deed executed were false and (ii) their omissions (*i.e.*, their intentional failure to disclose the entirety of the transaction that resulted in the March 26th Deed of Trust and each of the subsequent Transactions) were so material that they knew that disclosure of the same would have caused either the withdrawal or invalidation of any consent that they had attempted to obtain in connection with the 2018 Grant Deed.  Thus, through an intentional amalgamation of outright false statements, half-truths, and epic concealments, they misappropriate 3549 Middlefield Road.

191.     By failing to disclose in any of their interactions with University AME Zion the material facts that would have allowed University AME Zion to make an informed decision, the Debtor-Defendants failed to act with either honesty or integrity.

192.     In addition, when engaging with each local church under his oversight, including University AME Zion, Powell was also obliged to comply with and act in accordance with the Book of Discipline.  Instead, Powell set aside his fiduciary obligations in an effort to wield

absolute and all-encompassing authority over all local AME Zion churches within the Western Episcopal District to the benefit of the Debtor and the clear detriment of local churches such as University AME Zion.

193.    As noted by the Board of Bishops in its January 7th Statement:

Not only did Bishop Powell fail to uphold his vow to safeguard and adhere to the law of The AME Zion Church with regard to the sale, mortgaging, or transfer of church property; he actively engaged in acts of intimidation, manipulation, and deception in order to illegally have local church deeds altered and property transferred to a shell corporation, avoiding accountability.

*See* January 7th Statement, pg. 2, ¶ 8.

194.    The acts of fraud and concealment perpetrated by the Debtor-Defendants on University AME Zion, are the direct and proximate cause of there being approximately $3,921,000 of unauthorized loans that purport to be secured by 3549 Middlefield Road.

195.    As a direct result of the acts of fraud and concealment perpetrated by the Debtor-Defendants on University AME Zion, a cloud has been placed upon the title to 3549 Middlefield Road and University AME Zion is now at risk of losing 3549 Middlefield Road.

196.    Although the damages inflicted on University AME Zion by the Debtor-Defendants are in some respects immeasurable, the immediate and direct damage sustained by University AME Zion is, at a minimum, not less than $3,921,000.00.

197.    As the irreparably flawed 2018 Grant Deed is the direct and proximate result of the fraud and acts of concealment perpetrated by the Debtor-Defendants on University AME Zion, the 2018 Grant Deed should be deemed void *ab initio* as of the date of its execution—as if it never existed and each of the Deeds of Trust to the extent that they purport to be secured by 3549 Middlefield Road should be determined to be void or voidable.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
(Against All Defendants, known and unknown)

198.    University AME Zion realleges and incorporates by reference all the allegations

contained in each of the paragraphs set forth above, as if fully set forth herein.

199.    A party is unjustly enriched when it retains a benefit to the detriment of another party against the fundamental principles of justice, equity, and good conscience.

200.    Each of the Defendants has reaped the benefit of title to, or an interest in, 3549 Middlefield Road as a result of the fraudulent conduct of the Debtor-Defendants alleged herein. That any Defendant would retain such a benefit to University AME Zion's detriment violates the fundamental principles of justice, equity and good conscience.

201.    Each Defendant should be required to relinquish such title to, or interest in, 3549 Middlefield Road that they have unjustly obtained to University AME Zion's detriment.

## PRAYER FOR RELIEF

WHEREFORE, University AME Zion respectfully requests that this Court enter judgment in favor of University AME Zion and against the Defendants:

A.    Preliminarily enjoining all Defendants from taking any further actions to encumber, market, sell, or otherwise transfer 3549 Middlefield Road while this Court determines title to 3549 Middlefield Road.

B.    Permanently enjoining all Defendants and all other persons claiming under them from asserting any claim of title or interest in 3549 Middlefield Road adverse to the title of University AME Zion.

C.    Declaring that (i) 2018 Grant Deed is void, (ii) title to University AME Zion's 3549 Middlefield Road must be "restored" to University AME Zion as the Board of Bishops has twice decreed, (iii) the Debtor does not have a cognizable interest in 3549 Middlefield Road, and (iv) 3549 Middlefield Road is not "property" of the Debtor's estate under section 541 of the Bankruptcy Code.

D. Declaring that each of the conveyances—the 2018 Grant Deed and each of the Deeds of Trust—(i) constitute a cloud upon the true title to 3549 Middlefield Road that must be quieted, (ii) is illegal, and (iii) is cancelled of record.

E. Restoring all of University AME Zion's right, title, and interest in 3549 Middlefield Road by quieting title, voiding, and extinguishing all claims, encumbrances, and security interests that any Defendant purports to hold, real or implied, as a claim against 3549 Middlefield Road, and making such quieting effective immediately prior to March 28, 2018, or, alternatively, March 26, 2018, the date on which the Debtor-Defendants executed the concealed March 26th Deed of Trust.

F. Waiving the requirement that a notice of *lis pendens* be filed in compliance with California Civil Procedure Section 761.010, deeming that the commencement of this action has effected such notice or, alternatively, allowing the automatic stay to be modified to allow University AME Zion to file the *lis pendens*, as required under California Civil Procedure Section 761.010.

G. Rescinding the 2018 Grant Deed and/or declaring that the 2018 Grant Deed is void and not enforceable and directing the Debtor to deliver the 2018 Grant Deed to the Clerk of the Court for cancellation.

H. Determining that the Debtor-Defendants (i) intentionally misrepresented their intent in connection with inducing University AME Zion to execute the 2018 Grant Deed that resulted in the transfer of 3549 Middlefield Road to the Debtor instead of the Western Episcopal District in trust and (ii)

fraudulently concealed each of the Transactions and, as a result, the 2018 Grant Deed should be deemed void *ab initio*, as if it never existed and each of the Deeds of Trust, to the extent that they purport to be secured by 3549 Middlefield Road, is void.

I.     Directing each of the Defendants to relinquish title to, or an interest in, 3549 Middlefield Road that they have unjustly obtained to University AME Zion's detriment.

J.     Awarding such other, further, and different relief as the Court deems equitable, just, and proper.

Dated:  January 14, 2021                         MAYER BROWN LLP


                                                 By:  /s/ Edward D. Johnson
                                                      Edward D. Johnson

                                                 *Attorneys for Plaintiff AME Zion Church of
                                                 Palo Alto, Inc.*

1

### VERIFICATION

2      I, KALOMA A. SMITH, declare as follows:

3      I am the Pastor-in-Charge for the Plaintiff AME Zion Church of Palo Alto, Inc. (more

4 formally known as University AME Zion Church) in the above-captioned matter.  I have

5 reviewed the foregoing Complaint and know the contents thereof, which are true of my own

6 knowledge, except as to those matters that are stated to be on information and belief and, as to

7 those matters, I believe the same to be true.

8      I declare under penalty of perjury pursuant to Bankruptcy Rule 1008, 28 U.S.C. § 1746

9 and the laws of the State of California that the foregoing is true and correct.

10

11 Executed on __14__ January, 2021.

12 Palo Alto, California                                          KALOMA A. SMITH

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT; CASE NO. 20-23726 (FEC); ADVERSARY PROCEEDING NO. -_____

NOTARIZATION OF VERIFIED SIGNATURE

STATE OF CALIFORNIA　　　)
　　　　　　　　　　　　　　) SS.:
COUNTY OF SANTA CLARA)

On the 14th day of January in the year 2021 before me, the undersigned, a Notary Public in and for said State, personally appeared KALOMA A. SMITH, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*See Attached Acknowledgement
Certificate*

_____
Notary Public

Notarial Seal:

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Santa Clara

On ___Jan. 14th, 2021_____ before me, Deisy Zamora Chavez, Notary Public,
       Date

personally appeared ___Kaloma A. Smith_____
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

DEISY ZAMORA CHAVEZ
COMM. # 2286855
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
MY COMM. EXP. APR. 28, 2023

Notary Seal                                              Notary Signature

———————————— **OPTIONAL** ————————————
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: __U.S Bankruptcy Court - Verification —__

10/01/2020

# Exhibits A-C in Support of Complaint

# Table of Contents

**Page #**

1.  **Exhibit A**                    **1**

2.  **Exhibit B**                    **3**

3.  **Exhibit C**                    **7**

**EXHIBIT A**



2379889                           5974 352

## QUIT CLAIM DEED

THE AFRICAN METHODIST EPISCOPAL
ZION CHURCH OF AMERICA, a corporation

hereby do ____ remise, release and QUIT CLAIM unto

AME ZION CHURCH OF PALO ALTO, INC.

all that real property situated in the   City of Palo Alto,

County of Santa Clara,                      State of California, described as follows:

BEGINNING at a point in the center line of Middlefield Road at the common corner for Lots 37, 38, 91 and 92, of the C. M. Wooster Company's Subdivision, as shown on the Map thereof hereinafter referred to, running thence North 52° West and along the center line of Middlefield Road 116.72 feet; thence running at right angles North 38° East and parallel with the dividing line between Lots 91 and 92, 559.82 feet to a point on the dividing line between Lots 90 and 91; thence South 52° East and along the dividing line between Lots 90 and 91, 116.72 feet to the common corner for Lots 90, 91, 92 and 93, thence running South 38° West and along the dividing line between Lots 91 and 92, 559.82 feet to the point of beginning and being the Southeasterly 116.72 feet of Lot 91, as shown upon that certain Map entitled, "Map of C. M. Wooster Company's Subdivision of the Clarke Ranch, Mayfield, Santa Clara County, California", which Map was filed for Record in the office of the Recorder of the County of Santa Clara, State of California, on November 11, 1912 in Book O of Maps, at Page 16.

Dated: April 5, 1963                   Oliver H. Thawchan, President
                                       Board of Trustees
                                       Rev. A. Thomas, Pastor.

### SOLELY FOR RECORDERS USE

2379889
5974 353

Lewis Farnsworth
APR 8  11 35 AM 1963
OFF. RECORDS
SANTA CLARA

STATE OF CALIFORNIA
COUNTY OF ____

My Commission Expires:

Notary Public

2379889 APR 8 63

### CITY TITLE INSURANCE COMPANY

# EXHIBIT B

**This document was electronically submitted to Santa Clara County for recording**

## 23899797

**Regina Alcomendras**
Santa Clara County - Clerk-Recorder
04/02/2018 09:21 AM

**RECORDING REQUESTED BY:**
Chicago Title Company

Titles: 1    Pages: 3
Fees: $31.00
Tax: $8800.00
Total: $8831.00

**AND WHEN RECORDED MAIL TO:**

AME Zion Western Episcopal District
8408 Loire Court
Stockton, CA 95209

THIS SPACE FOR RECORDER'S USE ONLY:

| Title Order No.: FSJP-3071700548 | | **Escrow No.: 018653-KL** |
|---|---|---|
| **AP#: 127-20-250** | **GRANT DEED** | |

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

**DOCUMENTARY TRANSFER TAX is $**2,200.00 County

[X] computed on full value of property conveyed, or          $6,600.00 City
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Palo Alto **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**AME Zion Church of Palo Alto, Inc**

hereby GRANT(s) to:

**AME Zion Western Episcopal District, a California Corporation**

the real property in the City of Palo Alto, County of Santa Clara, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
**Also Known as**: 3549 Middlefield Road, Palo Alto, CA 94306

AME Zion Church of Palo Alto, Inc

Dated March 28, 2018          BY:

Rev. Kaloma Smith, Chief Executive Officer

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA  Placer
COUNTY OF
On 03/28/2018          before me,  Alexandra Sokolova   A Notary Public personally
appeared          Kaloma Smith          who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.
WITNESS my hand and official seal.

ALEXANDRA SOKOLOVA
COMM. # 2160786
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES AUG. 10, 2020

Signature _____          (Seal)

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ Placer _____ )

On __03/28/2018_____ before me, __Alexandra Sokolova, Notary Public_____

(insert name and title of the officer)

personally appeared ____Kaloma Smith_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

ALEXANDRA SOKOLOVA
COMM. # 2160786
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES AUG. 10, 2020

Signature _____          (Seal)

## EXHIBIT "A"

Legal Description

**For APN/Parcel ID(s): 127-20-250**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PALO ALTO, COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PORTION OF LOT 91, S SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF C. M. WOOSTER COMPANY'S SUBDIVISION OF THE CLARKE RANCH", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON NOVEMBER 11, 1912 IN BOOK O OF MAPS, AT PAGE 16, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE CENTER LINE OF MIDDLEFIELD ROAD, AT THE COMMON CORNER FOR LOTS 37, 38, 91 AND 92, AS SAID ROAD AND LOTS ARE SHOWN UPON THE MAP ABOVE REFERRED TO; THENCE FROM SAID POINT OF BEGINNING NORTH 52° 00' WEST ALONG SAID CENTER LINE OF MIDDLEFIELD ROAD FOR A DISTANCE OF 116.72 FEET TO THE WESTERNMOST CORNER OF THAT CERTAIN TRACT OF LAND DESCRIBED IN THE DEED FROM JOSEPH A. HERNANDEZ, ET UX, TO THE AFRICAN METHODIST EPISCOPAL ZION CHURCH OF AMERICA, A CORPORATION DATED JULY 20, 1962, RECORDED SEPTEMBER 7, 1962 IN BOOK 5712 OFFICIAL RECORDS, PAGE 211, SANTA CLARA COUNTY RECORDS; THENCE NORTH 38° 00' EAST AND PARALLEL WITH THE DIVIDING LINE BETWEEN SAID LOTS 91 AND 92 FOR A DISTANCE OF 324.82 FEET TO THE WESTERNMOST CORNER OF THAT CERTAIN TRACT OF LAND DESCRIBED IN THE DEED FROM AME ZION CHURCH OF PALO ALTO, INC., A CORPORATION, TO WILLIAMS CONSTRUCTION COMPANY, A CO-PARTNERSHIP, DATED NOVEMBER 17, 1964, RECORDED DECEMBER 11, 1964 AND BOOK 6777 OFFICIAL RECORDS, PAGE 85, SANTA CLARA COUNTY RECORDS; THENCE SOUTH 52° 00' EAST ALONG SOUTHWESTERLY LINE OF LAND SO DESCRIBED IN THE DEED TO SAID WILLIAMS CONSTRUCTION COMPANY FOR A DISTANCE OF 116.72 FEET TO THE SOUTHERNMOST CORNER THEREOF IN THE SAID DIVIDING LINE BETWEEN LOTS 91 AND 92; THENCE SOUTH 38° 00' WEST ALONG SAID DIVIDING LINE BETWEEN LOTS 91 AND 92 FOR A DISTANCE OF 324.82 FEET TO THE POINT OF BEGINNING.

PARCEL:

ALL OF LOT 13, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "RECORD OF SURVEY PORTION OF LOT 91 OF THE C. M. WOOSTER COMPANY'S SUBDIVISION OF THE CLARKE RANCH", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON APRIL 9, 1963 IN BOOK 159 OF MAPS, AT PAGE 30.

# EXHIBIT C



# The African Methodist Episcopal Zion Church

## THE BOARD OF BISHOPS

**BISHOP GEORGE D. CRENSHAW**
*President of the Board of Bishops*

**BISHOP GEORGE E. BATTLE, JR.**
*Senior Bishop*

## STATEMENT FROM THE BOARD OF BISHOPS CONCERNING THE SUSPENSION OF STACCATO POWELL AS AN ACTIVE BISHOP OF THE AME ZION CHURCH

January 7, 2021

This serves as official notification that pursuant to our authority granted under Paragraph 128 in the Book of Discipline, the Board of Bishops announces the immediate suspension of Staccato Powell as an active Bishop of the AME Zion Church pending the outcome of a trial to be convened at the 51st Session of the General Conference in July, 2021.

The gravity of this action weighs heavily upon your Board of Bishops and we grieve that the severe infractions and maladministration of Bishop Powell have left us with no alternative to this action.

Beginning in 2017, complaints were submitted to the Board of Bishops that Bishop Staccato Powell was taking actions inconsistent with the AME Zion Church Discipline. These actions included, but were not limited to the demand that pastors amend church deeds so that the Western Episcopal District, Inc. be named as title holder. In most cases this action was taken without the proper and required votes of local church Trustees, Quarterly Conferences, and/or Membership Meetings. The Board of Bishops received information that local congregations were not made aware of the transfer of deeds or the mortgaging of their church properties until notifications of pending foreclosures were received.

During the Board of Bishops Meeting in February, 2018, and at a subsequent meeting with the President of the Board of Bishops, as documented in a letter to Bishop Powell dated August 7, 2018, he was directed to cease the practice of having deeds altered, mortgaging local church properties, to relieve the debt that was improperly placed upon the churches, and to immediately

begin the process of restoring deeds to language consistent with the Book of Discipline. *(see AMEZ BOD Pars. 398, (2016) and the Judicial Council Decision No. 2017 – 38*

After receiving additional reports and complaints of continued violations, the Board of Bishops on July 22, 2020 appointed a legal affairs committee and an audit committee to investigate the extent of legal and financial liabilities. Upon the recommendations of these committees, a law firm and an accounting firm were retained by the Board of Bishops. We also communicated with the membership of the Western Episcopal District to update them on the status of their complaints.

Based upon the initial findings of the legal team and the accountants, reported to the Board of Bishops on August 7, 2020, a meeting in which Bishop Powell participated, the Board voted to relieve Bishop Powell of all responsibilities as Presiding Bishop of the Western Episcopal District due to his continued and expanded violation of church law and the explicit directives of the Board of Bishops. He remained an active member of the Board of Bishops.

Subsequently, evidence has been presented to the Board of Bishops that Staccato Powell has continued unauthorized activities and communications in an attempt to obstruct efforts to both investigate and bring resolution to these matters. His representatives in court have taken positions in opposition to the position of the AME Zion Church's best interests, including asserting to the court that the corporation he established has the right to sell churches within the Western Episcopal District.

During the ongoing investigation and pending court actions, we must be prudent in sharing details of the significant scope of the violations committed by Staccato Powell; however, the following items are noteworthy:

1. Not only did Bishop Powell fail to uphold his vow to safeguard and adhere to the law of The AME Zion Church with regard to the sale, mortgaging, or transfer of church property; he actively engaged in acts of intimidation, manipulation, and deception in order to illegally have local church deeds altered and property transferred to a shell corporation, avoiding accountability.
2. Proceeds from mortgages obtained upon AME Zion Churches exceeded $14 million dollars of which the accounting for more than $8 million remains unreported. These transactions have the potential to place enormous debt upon our denomination.
3. Through his representatives, Bishop Powell has represented to the bankruptcy court that he has both the willingness and the right to sell church property obtained by his fraudulent actions to settle the outstanding debt of the Western Episcopal District, Inc.

Therefore, in consultation with our attorney, it has become painfully clear to the Board of Bishops that Staccato Powell's continuing status as an active Bishop in the Church creates significant legal and moral damage and that further action is both urgent and essential to severe him from any and all authority to speak or act on behalf of the AME Zion Church.

During the term of his suspension, Bishop Powell will:

1. Be immediately enjoined from operating in the office of the Episcopacy. He shall not speak or act with ecclesiastical or administrative authority within or beyond the confines of the AME Zion Church.
2. Be prevented from participating in Board of Bishops Meetings, Board of Trustees of our educational institutions, or any position that is bestowed upon him by virtue of his status as a Bishop.
3. Have no standing to represent The AME Zion Church in any ecumenical or civic association and must communicate such to any current affiliations forthwith.
4. Receive the current salary as an active Bishop until a final deposition of his status is determined by the General Conference.

We call upon all members to pray earnestly for the Board of Bishops and our beloved Zion. We also ask that you pray for Bishop Powell and his family. Please pray for the clergy and laity of the Western Episcopal District and Bishop Crenshaw as he provides episcopal oversight to the area.

Yours in Christian Love,

The Board of Bishops of the African Methodist Episcopal Zion Church
Bishop George D. Crenshaw, President
Bishop George E. Battle, Jr., Senior Bishop
Bishop Kenneth Monroe
Bishop Darryl B. Starnes
Bishop Dennis V. Proctor
Bishop Mildred Bonnie Hines
Bishop W. Darin Moore
Bishop Seth O. Lartey
Bishop Michael Angelo Frencher Sr.

Bishop Hilliard Dogbe
Bishop U.U. Effiong
Bishop Joseph Johnson
Bishop Marshall H. Strickland
Bishop George W.C. Walker, Sr.
Bishop S. Chuka Ekeman, Sr.
Bishop Nathaniel Jarrett
Bishop Warren M. Brown
Bishop Louis Hunter *(deceased)*